Statement of the Case.
N1CHOLLS, C. J.
The question before us for decision is as to the jurisdiction of the district court of Jackson parish. Defendant’s exception to the jurisdiction of that court having been sustained, and his demand dismissed, he has appealed.
The action is one of tort, brought against the defendant railroad corporation for damages. for having, through its fault and negligence, caused the death of Charles S. Culpepper, the son of the plaintiff.
The allegations as to the cause Of the injury, and the facts, were that On the night of the 6th of October, while the son was employed and in the service of the defendant company as locomotive engineer, at a point on the railroad of defendant company about V/sí miles south of the town of Jonesboro, in the parish of Jackson, the locomotive upon which he was employed in the service of defendant left the railroad track, careened to one side, and overturned into the ditch; that petitioner’s son, the. engineer upon the locomotive, was caught by the wreck of said engine and cab, and firmly held under a fierce and constant stream issuing from the boiler and steam pipes of said locomotive, in close and direct proximity thereto, until he was extricated from his perilous position some time after by the passengers upon the said train; that while their son was so confined by said wreck he was burned, bruised, and scalded in a most horrible manner, and, both while in said situation and for many hours thereafter, suffered excruciating pain and trouble and ageny, until relieved of his untold and indescribable suffering by death, which occasioned several hours thereafter.
That this disaster was caused by the defective machinery, deficient and insecure rails, rotten cross-ties, and defective material, and the improper construction and inadequate efforts to repair the roadbed and dump or embankment at the point at which said accident occurred. That said rails and cross-ties were totally unfit for the service required, and the usage for which they were subjected. That the rails were greatly worn by age and use, being secondhand at the time they were laid, very light in character, and of a type and material long since discarded by first-class railroad corporations; that the embankment at'which this calamity occurred was at the south edge of a trestle crossing a stream of water, and was in the neighborhood of 15 feet in height; that it was of very faulty construction, and imperfect, and not fitted for *748 the proper running of railway trains thereon; that the base of said embankment and dump was not sufficiently wide to afford the ordinary slope given to railroad embankments and to render the same solid and secure, this causing the top of said embankment, which formed the foundations of the track at that point, to be entirely too narrow, and the slope of the embankment too steep, to have sufficient strength to maintain and support the weight with safety necessary to be placed thereon by the running of locomotives and cars thereon.
That said embankment, at .the point where said wreck occurred, had become out of repair by the sliding down of dirt from the top and sides thereof during the winter of 1901 and 1902, and the said railroad, in their efforts to repair the same, instead of replacing the defective parts of said embankment with dirt and gravel or other suitable material, as they should have done, resorted to the parsimonious subterfuge of placing under the ends of the said cross-ties, and at lengthway with the railroad, and directly under the rails, a wooden plank to support the same, filling under and over said plank with dirt, thus rendering said track and roadbed totally unsafe and dangerous, to the full knowledge of the said defendant company and its general managers; that said road at said point was permitted to remain by the managers of said railroad in this insecure and dangerous condition until the time of said accident, the only effort to repair the same being the deposit from time to time of a small quantity of loose earth upon the top of said wooden plank, thus concealing said defect from the operators of said road, and without in any manner rendering the condition of said embankment more secure; that, after the concealing of said defects in said road by the placing of dirt upon said wooden plank therein, petitioner’s said son took employment in the service of said company, which employment only lasted a few days before he met his death as above described.
That, on account of the defective condition of said roadbed and track at said' point, when the local freight train going north on the night of the 6th of October passed over the point above mentioned it caused a part of the said embankment and track under which said wooden plank was placed to give way, the plank and dirt supporting the same sliding from its position, or loosening to such an extent as to be easily slid to one side; and when the engine upon which petitioner’s son was employed as an engineer was attempting to pass over the same several hours thereafter, and at about 12:15 a. m. on the morning of October 7, 1902, the engine and tender careened, left the track, and turned over down said embankment, causing the injury of petitioner’s son as above set forth.
That notwithstanding that .said defendant company well knew of the faulty and dangerous condition of its railroad track as. above, alleged, and the faulty method adopted in attempting to repair the same, and the absolute need of repair in strengthening said track, they have for the past 12 months pursued a parsimonious policy in cutting down the number of its repair forces and reducing its efficiency, so that at the time of, and long prior to, said calamity, said force was totally insufficient and inadequate .to-make the usual and customary repairs on its track, which was imperatively required by its dangerous and unsafe condition, thus willfully and wantonly jeopardizing and sacrificing the safety and lives of its employés and of the traveling public.
Petitioner avers that on account of the facts above set forth, all of which were well known to said defendant company, the death of the said son, Charles Stewart Culpepper, was caused by the gross, wanton, and criminal negligence and faults of said defendant company in using defective material and insufficient and faulty rails and ties, and the criminal neglect to repair its roadbed in a proper and safe method and put the same in a safe condition for traffic and traveling, and in permitting plank or slabs to be placed in and to remain in the dump or embankment of said track, for months at a time, as was done in this instance.
Petitioner avers that no fault of any nature attaches to said engineer, as his fellow servants were faithful and competent in discharging the important duties assigned to them, and ignorant of the fact of the defective and dangerous condition of said railroad track, and that plank or slabs had been-placed in the dump or embankment at that point, or that the said dump had given way *750 after the passage of the freight train over the same that night as above set forth.
Opinion.
Defendant excepted that its domicile was in the parish of Lincoln, and that for all acts of omission or passive acts it should be sued at its domicile, and the court for Jackson was without jurisdiction. In support of this position it relied upon paragraph 9 of article 165 of the Code of Practice, which declares that “in all cases where any corporation shall commit trespass or do anything for which an action for damages lies it shall be liable to be sued in the parish where such damage is done or trespass committed,” and upon the decisions of this court in Montgomery v. La. Levee Company, 30 La. Ann. 609, Heirs of Gossin v. Williams & R. R. Co., 36 La. Ann. 186, and Caldwell v. R. R. Co., 40 La. Ann. 753, 5 South. 17, to the effect that the provisions of that article applied to acts of commission, and not to acts of omission.
The court adopted defendant’s view of the legal situation, and dismissed the suit. We think it erred, and that the case fell under the rule announced in Castille v. Refinery, 48 La. Ann. 330, 19 South. 332, in which this court held that, “where the force brought into operation which caused death was actively set and brought into action through agencies controlled by the defendant company, the latter was suable in the parish where the tort was committed.”
Here the ground of. action assigned was not only a passive fault and wrong through the bad condition of the embankment, but an active fault of “commission” by the defendant running its trains over the faulty road base and tracks and the dangerous embankment. If plaintiff’s allegations be true, defendant was guilty of two faults — one of “omission” in not placing its embankment, roadbed, and tracks in good condition; the other in having, after it had placed or left them in bad condition, itself brought about the injury by the act of “commission” in running its trains over such roadbe'd and tracks.
Viewing the action from this standpoint, we think the district court of Jackson had jurisdiction. Whether or not plaintiff can sustain his action on a trial upon the merits is a question not yet before us or before the latter court.
For the reasons assigned it is hereby ordered, adjudged, and decreed that the judgment of the district court be, and it is hereby, annulled, avoided, and reversed; and it is now ordered, adjudged, and decreed that the exception filed by the defendant to the jurisdiction of the district court be overruled as not well grounded, and that the cause be reinstated in the district court for the parish of Jackson. It is further ordered, adjudged, and decreed that this cause be remanded to the district court for that parish, and there proceeded with according to law. .
MONROE and PROVOSTY, JJ„ dissent.